Albert L. Underhill (Arizona Bar No 026130)
Underhill Law Office P.L.L.C.
7907 North 16th Drive
Phoenix, Arizona 85021
(602) 388-4020 (telephone and fax)
aunderhill@underhilllaw.net

*Attorney for Plaintiff Jeffrey Smith*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey Smith, an individual, | Case No. _____ |
| Plaintiff, | |
| vs. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT AND FEDERAL DECLARATORY JUDGMENT ACT** |
| Specialty Publishing Company, an Illinois corporation, | |
| Defendant. | **(JURY TRIAL DEMANDED)** |

Plaintiff, Jeffrey Smith ("Smith" or "Plaintiff"), by its undersigned attorney, complains of Defendant Specialty Publishing Company, an Illinois corporation ("Specialty" or "Defendant"), and respectfully shows the Court the following:

## PARTIES

1.      Plaintiff is an individual residing in Texas.

2.      Defendant Specialty is an Illinois corporation that resides at, and maintains its principal place of business at, 135 E. St. Charles Rd., Ste. D, Carol

1

Stream, IL 60188.  Specialty may be served with process by serving its registered agent, Gregory A. MacDonald at 2300 Barrington Rd., Suite 220, Hoffman Estates, IL, 60169.

## JURISDICTION AND VENUE

3.     This action arises under The Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. §1125(d)[1].  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1338, and Plaintiff seeks remedies under 15 U.S.C. §1114(2)(D)(v) and 28 U.S.C. §§2201 and 2202.

4.     This Court has jurisdiction over Defendant because Defendant consented to the jurisdiction of this Court when it elected, under the Uniform Domain-Name Dispute Resolution Policy ("UDRP"), to submit to jurisdiction of the court in "the location of the principal office of the concerned registrar."  The "concerned registrar" in this matter is GoDaddy.com LLC ("GoDaddy") which maintains its corporate headquarters and principal place of business in Scottsdale, Arizona.

5.     Venue is proper in this District because pursuant to UDRP procedure, Defendant agreed to litigate this dispute in "the location of the principal office of the concerned registrar."  Venue is additionally proper in this District under 28 U.S.C. §1391 because a substantial part of the events or

---

[1] The ACPA is part of the Lanham Act, 15 U.S.C. §1051 *et seq.*

omissions giving rise to Plaintiff's claims occurred in this District because the principal place of business of GoDaddy, the registrar of the disputed domain name, is in Scottsdale, Arizona and the threatened transfer of the domain name by GoDaddy to Defendant would accordingly be coordinated from Scottsdale, Arizona.  Additionally, the property that is the subject of this action, the domain name, is situated in Scottsdale, Arizona, GoDaddy's principal place of business.

## FACTS

6.     Smith is a small business owner who has been an investor and entrepreneur in the machine-to-machine industry for more than ten years.

The Eldercare Social Network Concept

7.     In 2008, Smith began considering developing a website to operate as a social network for eldercare.

8.     From 2009 forward, Smith researched developing and/or licensing technology, such as sensors, to collect data about the daily activities of senior citizens, such as the taking of medications, utilizing canes/wheelchairs, and engaging in other daily activities.  In concept, the sensors would communicate the collected data to a central hub where the data would be processed for access by other members of the eldercare network.  For example, the senior citizen's friends and family could access the data on the social network website to remotely monitor the individual's daily activity and health.

9.      Since the inception of the idea, Smith spent considerable time and money developing the concept, including, but not limited to, considering a trial in the eldercare industry, developing a business plan, researching and developing the technology, identifying potential business partners, and evaluating the market for such a social network for eldercare.

Smith Acquires "connectedworld.com"

10.     In May 2011, Smith was researching domain names available for purchase through an online auction and discovered that "connectedworld.com" was available for purchase.

11.     On or about May 31, 2011, Smith purchased the domain name "connectedworld.com" from the online auction, with the intent to utilize it as the web address for operating the social network for eldercare.

12.     Smith paid $7,100.00 for the purchase of the domain name "connectedworld.com."

13.     On June 2, 2011, Smith registered the domain name "connectedworld.com" with domain name registrar GoDaddy.com, LLC, whose headquarters are located in this judicial district.

14.     After purchasing and registering the domain name, Smith took steps to prepare the domain name for use,  including, but not limited to:  (1) considering use of his employer's home hub device for use as the "hub" of an eldercare home

network; (2) considering a joint venture with his employer to develop and launch the eldercare social network; (3) purchasing sensors from greengoose.com for use, or modified design, in "connectedworld.com;" and (4) contracting with a third party to develop hardware for use with the "hub device."

Specialty Publishing Company

15.     Prior to purchasing the domain name, Smith had interacted with Specialty, both on behalf of his employer and individually, as a speaker and panelist at conferences hosted by the online[2] and print magazine *ConnectedWorld* (a Specialty publication).

16.     On June 2, 2011, Smith informed Specialty that he had acquired the connectedworld.com.

17.     On June 22, 2011, Defendant informed Smith that it had acquired a trademark registration for its mark consisting of the words "Connected World" wherein the letter "O" of the word "Connected" depicts the picture of a globe and the word "World" is written below the word "Connected" (the "Trademark").

18.     On information and belief, on or about May 31, 2011, Defendant was granted the Trademark.

19.     Until June 22, 2011, Smith was not aware that Defendant had applied for or acquired the Trademark.

_____

[2] Specialty operates a website at "connectedworldmag.com."

20.     Defendant's Trademark rights are limited to the goods and services specifically enumerated in Defendant's registration with the United States Patent and Trademark Office ("USPTO").

21.     Defendant's trademark registration specifically enumerated the following goods and services:

        a.     Magazines in the field of emerging technologies, trends, and business in Class 16;

        b.     Arranging and conducting business conferences in the field of emerging technologies and trends in Class 35;

        c.     Arranging and conducting educational conferences in the field of emerging technologies and trends in Class 41; and

        d.     Providing a website featuring information on emerging technologies and trends, namely, product development in Class 42.

22.     Defendant's trademark registration does not include eldercare, healthcare, or healthcare services.

Post-Acquisition Communications Between Smith and Defendant

23.     Subsequent to learning Smith had acquired "connectedworld.com," Defendant offered Smith $1,000.00 to purchase the domain name.

24.     Smith declined Defendant's offer and informed Defendant of his intentions for the domain name stating that he had an opportunity to start a "software as [a] service" social networking website for machines around the domain.

25.     Smith has never listed the domain name connectedworld.com for resale on an internet auction or solicited third parties to purchase the domain name.

Parties' Prior UDRP Dispute

26.     On or about February 24, 2012,[3] Defendant filed a Complaint in Accordance with Domain Name Dispute Resolution Policy ("UDRP") before the National Arbitration Forum ("NAF").

27.     On or about April 24, 2012, the NAF panel issued a decision against Smith and ordered that GoDaddy transfer the domain name connectedworld.com from Smith to Defendant.

28.     Pursuant to UDRP, the transfer order is automatically stayed if Smith files a lawsuit in proper jurisdiction within 10 business days.

29.     Currently the domain name connectedworld.com had been de-activated.

---

[3] The formal date of commencement of the NAF proceeding was March 2, 2012.

## CAUSE OF ACTION

## COUNT 1: REQUEST FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

30.     Smith hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

31.     Smith is the registrant of the domain name connectedworld.com.

32.     Smith's domain name (connectedworld.com) has been suspended, disabled, and ordered transferred by the NAF panel, pursuant to the UDRP.

33.     Defendant, by service of this lawsuit, along with a courtesy email enclosing a copy of this lawsuit, has been notified of this action to establish that Smith's registration and use of the connectedworld.com domain name by Smith is not unlawful under the ACPA and the Lanham Act.

34.     Pursuant to the Federal Declaratory Judgment Act and the reverse domain name hijacking provision of the ACPA, Smith requests the Court declare that:  (1) Smith's registration and use of the domain name connectedworld.com is not unlawful under the ACPA and the Lanham Act and (2) Smith is the rightful owner of the domain name connectedworld.com.  *See* 15 U.S.C. §§1114 and 1125; 28 U.S.C. §§2201 and 2202.

8

35.    Plaintiff further requests the Court grant Plaintiff injunctive relief ordering the re-activation of the domain name connectedworld.com.   *See* 15 U.S.C. §1114(2)(D)(v).

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Jeffrey Smith, requests that Defendant Specialty Publishing Company be cited to appear and answer this Complaint and that upon final hearing that Plaintiff have judgment against Defendant as follows:

a.    A declaratory judgment stating that: (1) Plaintiff Jeffrey Smith's registration and use of the domain name connectedworld.com is not unlawful under the ACPA and Lanham Act and (2) that Plaintiff is the rightful owner of the domain name connectedworld.com;

b.    Injunctive relief ordering the re-activation of the domain name connectedworld.com;

c.    Reasonable attorneys' fees and expenses for pre-trial, trial, and any subsequent appeal and petitions for review; and

d.    All such other and further relief, at law and in equity, to which Plaintiff may be entitled.

Dated: May 7, 2012

Respectfully submitted,


By: s/ Albert L. Underhill

Albert L. Underhill
(Arizona Bar No. 026130)
Underhill Law Office P.L.L.C.
7907 North 16th Drive
Phoenix, Arizona 85021
(602) 388-4020 (telephone and fax)
aunderhill@underhilllaw.net

*Attorney for Plaintiff Jeffrey Smith*

10

**DEMAND FOR JURY TRIAL**

Plaintiff Jeffrey Smith hereby demands a jury trial.

Dated: May 7, 2012

Respectfully submitted,

By: s/ Albert L. Underhill

Albert L. Underhill
(Arizona Bar No. 026130)
Underhill Law Office P.L.L.C.
7907 North 16th Drive
Phoenix, Arizona 85021
(602) 388-4020 (telephone and fax)
aunderhill@underhilllaw.net

*Attorney for Plaintiff Jeffrey Smith*